UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DANTZLER, INC.                                    CIVIL ACTION

VERSUS                                           NO. 20-931

INTERMARINE LLC, *et al.*                        SECTION M (5)

## ORDER & REASONS

Before the Court is the motion of defendant ZEAMARINE Americas, LLC ("Zeamarine") to dismiss the complaint, amended complaint, and second amended complaint of Dantzler, Inc. ("Dantzler") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[1]   Dantzler opposes the motion.[2]   Zeamarine replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion, finding that Dantzler has alleged a plausible basis for relief.

## I.    BACKGROUND

This case arises out of a dispute over the enforcement of a foreign judgment.  Dantzler hired Monsted Chartering K/S ("Monsted") under a bill of lading to deliver lumber by sea from Itajai, Brazil, to San Juan, Puerto Rico.[4]   The lumber arrived in Tampico, Mexico, instead.[5] Because of this mishap and its consequences, Dantzler sued Monsted in the Second Civil Court of Itajai in Brazil.[6]   While the lawsuit was pending, Monsted merged with Scan-Trans Chartering

---

[1] R. Doc. 63.
[2] R. Doc. 66.
[3] R. Doc. 71.
[4] R. Doc. 63-1 at 1; 66 at 1.
[5] R. Doc. 63-1 at 1; 66 at 1.
[6] R. Doc. 63-1 at 1-2; 66 at 1.

K/S ("Scan-Trans").[7]   The Brazilian court rendered judgment in Dantzler's favor (the "First Judgment") on March 3, 2010.[8]   A second judgment was later rendered by the court to correct certain errors in the First Judgment (the "Second Judgment").   The Second Judgment was upheld on appeal.[9]

Dantzler then learned that Scan-Trans had merged with Intermarine as its successor, having purchased its assets, to form Intermarine-IMC.[10]   Dantzler sought to amend the Second Judgment to substitute Intermarine-IMC for Scan-Trans as judgment debtor, procuring letters rogatory to serve Intermarine-IMC with notice of this proceeding.[11]   The parties dispute whether the letters rogatory were properly issued and properly served.[12]   A third judgment was issued by the Brazilian court substituting Intermarine-IMC for Scan-Trans as judgment debtor (the "Third Judgment").

Thereafter, Dantzler filed this lawsuit in the United States District Court for the Southern District of Florida,[13] but when personal jurisdiction was challenged, the case was transferred to this Court.[14]

## II.   PENDING MOTION

In its motion to dismiss, Zeamarine argues that Dantzler has not presented a plausible legal claim for relief but, instead, asserts legal conclusions rather than factual allegations.[15]   The foreign judgment cannot be enforced against Zeamarine, it asserts, because it is not expressly

---

[7] R. Doc. 63-1 at 2; 66 at 1.
[8] R. Doc. 63-1 at 2; 66 at 1.
[9] R. Doc. 63-1 at 2.
[10] R. Doc. 63-1 at 2; 66 at 2.  In its complaint, Dantzler uses the term "Intermarine," R. Doc. 57, whereas in the briefing of this motion, both parties use the term "Intermarine-IMC," depending on the context.
[11] R. Doc. 63-1 at 2; 66 at 2.
[12] R. Doc. 63-1 at 2-3; 66 at 2.
[13] R. Doc. 63-1 at 3.
[14] *Id.*
[15] R. Doc. 71 at 1-2.

listed in the judgment as a judgment debtor.[16]  Further, Zeamarine argues that the Brazilian court

never had personal jurisdiction over it so the judgment is unenforceable in any event.[17]

In opposition, Dantzler asserts that the allegations of the complaint must be accepted as

true in assessing its claims at this stage.[18]  It contends that Zeamarine's arguments hinge on

factual determinations that are not appropriate at this time, including, for example, how service

of the letters rogatory was made and whether the steps taken by the Brazilian court to amend the

judgment provided the opportunity for an adversarial hearing and due process.[19]  Dantzler also

argues that the failure of the Brazilian judgment to name either Intermarine or Zeamarine does

not of itself preclude enforcement of the judgment against them.[20]

## III.    LAW & ANALYSIS

### A.  Rule 12(b)(6) Standard[21]

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must

"'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

*Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does

not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the

---

[16] R. Doc. 63-1 at 14-16.
[17] *Id.* at 13-14.
[18] R. Doc. 66 at 3.
[19] *Id.* at 9-15.
[20] *Id.* at 7-9.
[21] Zeamarine also brings its motion under Rule 12(c) of the Federal Rules of Civil Procedure, but "[t]he standard for Rule 12(c) and Rule 12(b)(6) motions is the same."  *Robinson v. Webster Cty.*, 2020 WL 5160059, at *2 (5th Cir. Aug. 31, 2020) (citing *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209-10 (5th Cir. 2010)).

elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*,

4

869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).  Motions to dismiss are disfavored and rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  A court may also take judicial notice of certain matters, including public records and government websites.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).  Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B.  Analysis**

The judgment at issue in this case arises out of the alleged misdelivery of a shipment of timber, which was deposited in Mexico rather than the port of delivery (San Juan, Puerto Rico) specified in the bill of lading.  Foreign judgments can be enforced in the United States either under the principle of comity, *Banque Libanaise Pour Le Commerce v. Khreich*, 915 F.2d 1000, 1004 (5th Cir. 1990) ("Historically foreign country judgments have not been entitled to full faith and credit, but only to comity."), or as a matter of state law.  *Id.* at 1003 ("Courts have frequently

held that state law governs the recognition and enforcement of foreign country judgments."). The rationale for enforcing foreign money judgments is similar to the theory of *res judicata* for domestic judgments, namely, that judgments that have been fully and fairly heard on the merits should be recognized as final and enforced. *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de C.V.*, 347 F.3d 589, 593 (5th Cir. 2003).

In asking this Court to enforce the foreign-country judgment at issue, Dantzler has alleged in his second amended complaint both federal question and diversity subject-matter jurisdiction. "[T]o determine whether a judgment issued by a court of a foreign country is entitled to preclusive effect, the threshold inquiry is whether the case arises under federal question or diversity jurisdiction." *Taveras v. Taveras*, 477 F.3d 767, 783 (6th Cir. 2007) (citing 18B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4473 (2d ed. 2002)). When jurisdiction for the lawsuit is based on a federal question, federal law applies, *id.*; however, when federal jurisdiction is based on diversity, state law applies. *See DeJoria v. Maghreb Petroleum Expl., S.A.*, 935 F.3d 381, 385 (5th Cir. 2019) ("Recognition of foreign-country judgments is a matter of state law and was once mostly governed by principles of comity."); *Success Motivation Inst. of Japan v. Success Motivation Inst., Inc.*, 966 F.2d 1007, 1009-10 (5th Cir. 1992) ("*Erie* applies even though some courts have found that these suits necessarily involve relations between the U.S. and foreign governments, and even though some commentators have argued that the enforceability of these judgments in the courts of the United States should be governed by reference to a general rule of federal law.").

Although Dantzler does allege diversity as one of the bases for this Court's jurisdiction, jurisdiction here should properly be considered as a federal question because lawsuits to enforce a foreign-country judgment retain the jurisdictional nature of the underlying judgment. *Int'l Sea Food Ltd. v. M/V Campeche*, 566 F.2d 482, 483-84 (5th Cir. 1978) (disagreeing with district

court's characterization of the enforcement of a foreign court's maritime judgment as "simply a suit on a foreign money judgment").  The enforcement of foreign admiralty or maritime judgments, such as the one in this case, remain admiralty and maritime cases for jurisdictional purposes.  Even if a case does not involve a remedy of a "distinctly maritime flavor, such as prize or maritime lien," but is confined to a judgment for money damages, "the maritime aspects of th[e] case [do not] vanish[] once the judgment was rendered."  *Id.* at 484; *see also Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 535 (4th Cir. 2013) (rejecting contention that foreign court's judgment reduced to a monetary award lacked maritime character as would support admiralty jurisdiction); *d'Amico Dry d.a.c.. v. Nikka Fin., Inc.*, 429 F. Supp. 3d 1290, 1299-1300 (S.D. Ala. 2019) (same).  This is in accord with the "general principle that admiralty courts of this nation are empowered to carry into effect the maritime decrees of foreign admiralty courts." *Int'l Sea Food Ltd.*, 566 F.2d at 484.  Since Dantlzer has pleaded that the judgment sought to be enforced arose in a maritime setting and has invoked this Court's federal question (admiralty) jurisdiction, federal law and, therefore, comity apply.

"Under principles of international comity, a foreign court's judgment on a matter is conclusive in a federal court when (1) the foreign judgment was rendered by a court of competent jurisdiction, which had jurisdiction over the cause and the parties, (2) the judgment is supported by due allegations and proof, (3) the relevant parties had an opportunity to be heard, (4) the foreign court follows procedural rules, and (5) the foreign proceedings are stated in a clear and formal record."  *Int'l Transactions, Ltd.*, 347 F.3d at 594 (citing *Hilton v. Guyot*, 159 U.S. 113, 159 (1895)) (applying federal law for enforcement of a judgment from a Mexican bankruptcy court).  Dantzler alleges that the judgment sought to be enforced was rendered by "a court of competent jurisdiction in Brazil" and that the court adhered to process and had

jurisdiction over the cause and the parties.[22]   Dantzler also pleads that the judgment was supported by "due allegations and proof" as reflected in the documents it attaches to its complaint, which may be said to constitute, at least in part, "a clear and formal record" of the foreign court's proceedings.[23]   Further, Dantzler alleges that the parties, including the defendants, or at least their predecessors in interest, had an opportunity to be heard.[24]   Accepting the pleaded facts as true and viewing them in the light most favorable to the plaintiff, as is required on a motion to dismiss, Dantzler has stated a claim to relief for enforcement of a foreign judgment that is plausible on its face (even if it later proves to be doubtful in fact).   *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.   And Zeamarine has "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.   Consequently, at this stage of the proceedings, it is necessary to deny Zeamarine's motion.

IV.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that the motion of defendant ZEAMARINE Americas, LLC to dismiss the complaint, amended complaint, and second amended complaint of Dantzler, Inc. is DENIED.

New Orleans, Louisiana, this 16th day of September, 2020.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[22] R. Doc. 57 at 1, 4-9.
[23] R. Docs. 57-1; 57-2; 57-3.
[24] R. Doc. 57 at 4-9.